IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES E. CLEMENS, | ) | |
| | ) | Civil Action No. 11 - 1482 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Chief Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| MR. LOCKETT, MR. BEAR, MR. FRIESS, MR. LIECICH, MR. ROCHE, and MR. BEARD, | ) | ECF No. 56 |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM ORDER**

Pending before the Court is a Motion for Summary Judgment filed by the Defendants: Jeffrey Beard, Secretary of the Pennsylvania Department of Corrections; Melvin Lockett, Superintendent of the State Correctional Institution at Pittsburgh ("SCI-Pittsburgh"); and the following four SCI-Pittsburgh Correctional Officers, Robert Roche, Shawn Lacich, Kevin Friess and Frank Bayer. Defendants filed their Motion on May 14, 2013, and Plaintiff filed his response in opposition on June 14, 2013. The Court has reviewed the pleadings and documents in this case, and, for the reasons set forth herein, finds that Defendants are entitled to judgment as a matter of law. Their motion will be granted accordingly.

**I. STANDARD OF REVIEW**

Summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, the record indicates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of

1

any element to that party's case and for which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The moving party bears the initial burden of identifying evidence or the lack thereof that demonstrates the absence of a genuine issue of material fact. National State Bank v. Federal Reserve Bank of New York, 979 F.2d 1579, 1582 (3d Cir. 1992). Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). The inquiry, then, involves determining "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Brown v. Grabowski, 922 F.2d 1097, 1111 (3d Cir. 1990) (quoting Anderson, 477 U.S. at 251-52). If a court, having reviewed the evidence with this standard in mind, concludes that "the evidence is merely colorable . . . or is not significantly probative," then summary judgment may be granted. Anderson, 477 U.S. at 249-50. Finally, while any evidence used to support a motion for summary judgment must be admissible, it is not necessary for it to be in admissible form. *See* Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 324; J.F. Feeser, Inc., v. Serv-A-Portion, Inc., 909 F.2d 1524, 1542 (3d Cir. 1990).

## II.  DISCUSSION

Plaintiff raises thirty-three (33) "counts" in his amended complaint, wherein he alleges a hodgepodge of various misconduct committed by the Defendants. As noted in Defendants' Brief, some "counts" contain multiple claims while others contain no claims at all. In essence,

his amended complaint appears to be a diary of events that occurred on particular days from November 2009 to February 2010. Although Defendants separately addressed each claim in each "count", in an effort to simplify matters for the parties, the Court has grouped together like claims and will address them by topic regardless of in what count they are presented.

### A. Retaliation

The overiding claim of Plaintiff's complaint is that he was retaliated against for filing grievances and practicing his Islamic faith. It appears as though he believes that Defendants Friess and Lacich had some sort of personal vendetta against him and that any negative action taken on their part was in retaliation for his efforts to practice his religion and complaining about their ongoing mistreatment. In this regard, Plaintiff complains that he was denied linens, showers, yard, access to property, phone calls, and snack bags; denied an incentive based prison transfer; and issued fabricated misconducts. He also claims that they denied him or threw away his grievances, tampered with mail, threatened him bodily harm, called him names, and just all around humiliated him. *See generally* ECF No. 27.

In order to prevail on a retaliation claim, a plaintiff must show three things: (1) that the conduct in which he engaged was constitutionally protected; (2) that he suffered "adverse action"[1] at the hands of prison officials; and (3) that his constitutionally protected conduct was a substantial motivating factor in the defendants' conduct.[2] Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001) (adopting Mount Healthy Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)). Once all

---

[1] An adverse action is one "sufficient to deter a person of ordinary firmness from exercising his rights." Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000).

[2] The crucial third element, causation, requires a plaintiff to prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. *See* Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007); Krouse v. American Sterilizer Co., 126 F.3d 494, 503-04 (3d Cir. 1997)).

three criteria are met, the burden then shifts to the defendants "to prove by a preponderance of the evidence that it would have taken the same disciplinary action even in the absence of the protected activity." Rauser, 241 F.3d at 333. This means that "prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Id. at 334 (incorporating Turner v. Safley, 482 U.S. 78, 89 (1987)).

In this case, Plaintiff makes only conclusory allegations of retaliation with respect to most of the alleged wrongdoing. There are only a few instances where Plaintiff actually links the adverse action taken against him to the exercise of protected activity. Therefore, the Court will address only those claims where Plaintiff has made a *prima facie* showing of retaliation.

With respect to the first factor, it is undisputed that a prisoner's ability to file grievances against prison officials is a protected activity for purposes of a retaliation claim, as is a prisoner's ability to practice his religion. Therefore, Plaintiff has satisfied his burden with respect to this first factor. *See* Milhouse v. Carlson, 652 F.2d 371, 373-74 (3d Cir. 1981) (retaliation for exercising right to petition for redress of grievances states a cause of action for damages arising under the constitution). *See also* McLeod v. Still, No. 05-4635, 2006 U.S. Dist. LEXIS 9702, at *10-11 (D. N.J. Feb. 14, 2006).

With respect to the second factor, Plaintiff asserts that he suffered many adverse actions. The first of these is verbal harassment after stating that he was a Muslim. Plaintiff also alleges that he was verbally harassed because he filed grievances on staff members. However, with the exception of some insulting comments made about his religious diet and rituals, Plaintiff does not specifically state the things that were said to him. General verbal harassment and antagonizing has been found to not constitute an actionable adverse action. *See* Marten v. Hunt,

479 F. App'x 436 (3d Cir. 2012); Frazier v. Daniels, 2010 U.S. Dist. LEXIS 50641, 2010 WL 2040763, at *11 (E.D. Pa. May 20, 2010); Burgos v. Canino, 641 F. Supp. 2d 443, 456 (E.D. Pa. 2009). While the court does not condone the type of comments allegedly made to Plaintiff, under applicable case law they do not rise to the level of an adverse action.

Plaintiff next alleges that he was denied clean linens and a clean jumpsuit on two occasions by Defendant Friess who told Plaintiff that he could not have any because he was "stupid" and "prayed to terrorists." Plaintiff also alleges that when he asked to get addresses from his property, Defendant Friess denied him stating, "Why, so you can make plans for your Jihad?" Additionally, Plaintiff alleges that Defendant Bayer denied him yard on one occasion after making reference to the fact that Plaintiff had put his name in a grievance. Notwithstanding the fact that Defendants have submitted documentation showing that Plaintiff was provided clean linens and a jumpsuit on either the day of or the day before those days he claims he was denied them and that it was Plaintiff who refused to go to yard on the day he claimed he was denied it, these deprivations, assuming they are true, do not constitute adverse actions. The same holds true regarding the alleged denial of addresses from Plaintiff's property even though Plaintiff did ultimately receive those addresses.

Next, Plaintiff alleges that Sergeant Tempe threatened him with physical harm for harassing his officers and filing paperwork on them. Sergeant Tempe is not a defendant and therefore any claim made against him is not actionable in this case.

Finally, Plaintiff alleges that he was moved from the administrative custody side of the RHU to the disciplinary custody side of the RHU on January 8, 2010, and when he asked why he was told that the reason was because of his religion and that he should "change his religion" or this would "keep happening." While it does appear that Plaintiff was moved to a different cell

on this day, the record shows that Plaintiff remained in administrative custody. Nevertheless, even if this is incorrect, Plaintiff states that he was moved back to the administrative custody side of the RHU on January 11, 2010, three days later. The Supreme Court and the Third Circuit have noted that the conditions imposed on inmates in disciplinary custody mirror those conditions imposed on inmates in administrative segregation and protective custody "with insignificant exceptions." *See* Sandin v. Conner, 515 U.S. 472, 486 (1995); Mitchell v. Horn, 318 F.3d 523, 532 (3d Cir. 2003) (stating that the differences between administrative custody and disciplinary custody under the DC-ADM are "marginal" and do "not appear to cross the constitutional line"). Plaintiff has not demonstrated that the three days he spent in disciplinary custody, wherein the conditions were substantially similar to those in administrative custody, constitutes an adverse action for purposes of a retaliation claim. Upon review of Plaintiff's retaliation claims, the Court finds that Defendants are entitled to judgment as a matter of law.

**B. Conditions of Confinement**

Plaintiff appears to raise a conditions of confinement claim by alleging that he was denied showers for nine straight days. The Eighth Amendment imposes a duty on prison officials to provide "humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care." Farmer v. Brennan, 511 U.S. 825, 832 (1994). In Wilson v. Seiter, 501 U.S. 294 (1991), the Supreme Court set forth the standard for alleged violations of the Eighth Amendment while addressing non-medical conditions of confinement. The Court held that the prisoner must prove that prison officials acted with deliberate indifference that deprived him of "'the minimal civilized measure of life's necessities.'" Id. at 298-99, 301-05 (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).

Defendants have submitted documentation showing that Plaintiff received three showers during the specific period of time in question and Plaintiff has failed to provide this Court with anything that would put in question the authenticity or validity of these records. This Court has previously held that a plaintiff could not support his Eighth Amendment claim when department of corrections' records discredited his allegation that he was denied showers for fifteen days and his evidence failed to rebut their records. *See* Fortune v. Basemore, Civ. No. 04-377, 2008 WL 4525373, at *12 (W.D. Pa. Sept. 29, 2008). Nevertheless, even assuming Plaintiff was denied a shower for nine days, this deprivation, in and of itself, does not rise to the level of cruel and unusual punishment. *See* Schaeffer v. Schamp, Civ. No. 06-1516, 2008 WL 2553474, at *6 (W.D. Pa. June 25, 2008) (holding that plaintiffs "claims that he was placed in a hard cell for ten days without a mattress, soap, toilet paper, running water, legal supplies, his prescription medication and only received one meal a day" were insufficient to constitute an Eighth Amendment violation); Allebach v. Sherrer, Civ. No. 04-287, 2005 WL 1793726, at *4 (D. N.J. July 27, 2005) (holding that denial of running water, religious items, visitation, recreation, use of the telephone, mattress and clothing for thirty-six days was not cruel and unusual punishment under the Eighth Amendment when evidence showed that the plaintiff's nutritional need were met and that he was afforded living and hygienic conditions which were not injurious to him).

In his complaint, Plaintiff also references three separate dates where he was denied clean linens, two consecutive days where he was denied a medical snack bag, and an unspecified number of days where he was denied yard, phone calls, and property. Although the documentation submitted by Defendants disputes Plaintiff's allegations, to the extent his allegations have been specified, these conditions, by themselves, or collectively, are not

7

sufficiently serious enough to rise to the level of a constitutional deprivation of a basic human need. Therefore, his claim fails.

### C. Denial of Incentive Based Transfer

Plaintiff claims that he was either wrongfully denied an incentive based transfer to a facility in his home region or that his request for such a transfer went unanswered. However, it is well-established law that prisoners have no inherent constitutional right to placement in any particular prison, to any security classification, or to any particular housing assignment. *See* Olim v. Wakinekona, 461 U.S. 238 (1983); Meachum v. Fano, 427 U.S. 215, 225 (1976). Plaintiff has alleged nothing to make the denial of his request for an incentive based transfer actionable under the circumstances presented.

### D. Verbal Harassment

Throughout his amended complaint, Plaintiff makes numerous allegations of verbal harassment by Defendants Friess, Roche and Lacich. This includes everything from threats of physical harm for filing grievances, being called a snitch and a rat, and rudely commenting about Plaintiff's Islamic faith. Plaintiff also alleges that, following Defendants lead, other staff members and inmates would mock and laugh at him.

It is well settled that mere verbal harassment of a prisoner, although deplorable, does not violate the Constitution. Robinson v. Taylor, 204 F. App'x 155, 156 (3d Cir. 2006) (citing McBride v. Deer, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001); DeWalt v. Carter, 224 F.3d 607, 612 (7th Cir. 2000); Boddie v. Schnieder, 105 F.3d 857, 861 (2d Cir. 1997)). *See also* Morrison v. Martin, 755 F. Supp. 638, 687 (E.D. N.C. 1990); Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987); Collins v. Candy, 603 F.2d 825, 827 (10th Cir. 1979). As a general rule, verbal

abuse of inmates by guards, without harm, does not state a constitutional claim. *See* Cole v. Cole, 633 F.2d 1083, 1091 (4th Cir. 1980); Moody v. Grove, 885 F.2d 865 (4th Cir. 1989).

The Constitution does not "protect against all intrusions on one's peace of mind." Pittsley v. Warish, 927 F.2d 3, 7 (1st Cir. 1991). Verbal harassment or idle threats to an inmate, even to an extent that it causes an inmate fear or emotional anxiety do not constitute an invasion of any identified liberty interest. *See* Emmons v. McLaughlin, 874 F.2d 351, 354 (6th Cir. 1989) (stating verbal threats causing fear for plaintiff's life not an infringement of a constitutional right); Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir. 1985) (calling an inmate an obscene name did not violate constitutional rights); Lamar v. Steele, 698 F.2d 1286 (5th Cir. 1983) ("Threats alone are not enough. A 1983 claim only accrues when the threats or threatening conduct result in a constitutional deprivation."). The vast majority of allegations in Plaintiff's amended complaint involve verbal harassment and are not actionable.

### E. False Misconducts/Due Process

Plaintiff makes allegations that he was issued fabricated misconducts and misconducts without any factual support. He also claims that he was denied procedural due process protections in connection with his disciplinary hearings. In this regard, it is well established that the act of filing a false disciplinary charge does not itself violate a prisoner's constitutional rights even if it may result in the deprivation of a protected liberty interest. *See* Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986) (A "prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest"), *cert*. *denied*, 485 U.S. 982 (1988). Instead, inmates have the right not to be deprived of a protected liberty interest without due process of law. Thus, where the prisoner is provided due process, no constitutional violation results from being falsely accused of

a misconduct. *See* id. at 952-53 (holding that "the mere filing of [a false] charge" does not constitute a cognizable claim under § 1983 so long as the inmate "was granted a hearing, and he had the opportunity to rebut the unfounded or false charges"); Hanrahan v. Lane, 747 F.2d 1137, 1140 (7th Cir. 1984) (finding that so long as prison officials provide a prisoner with the procedural requirements outlined in Wolff v. McDonell, 418 U.S. 539, 558 (1974), then the prisoner has not suffered a constitutional violation); Strong v. Ford, 108 F.3d 1386, published in full-text format at 1997 U.S. App. LEXIS 5176, 1997 WL 120757 (9th Cir. 1997) (the alleged making of a false charge, however reprehensible or violative of state law or regulation, does not constitute deprivation of a federal right protected by section 1983 when it does not result in the imposition of atypical hardship on the inmate in relation to the ordinary incidents of prison life). *See also* Creter v. Arvonio, No. 92-4493, 1993 U.S. Dist. LEXIS 11016, 1993 WL 306425, at *7 (D. N.J. Aug. 5, 1993); Duncan v. Neas, No. 86-109, 1988 U.S. Dist. LEXIS 12534, 1988 WL 91571, at *1 (D. N.J. Aug. 30, 1988) (determining that "the alleged knowing falsity of the charge [does not state] a claim of deprivation of a constitutionally protected liberty interest . . . where procedural due protections were provided").

The threshold question presented by Plaintiff's claim is whether the sanctions imposed for his misconducts impacted a constitutionally protected liberty interest which would invoke the procedural due process protections which he alleges he was denied. In this regard, the Supreme Court has held that prison conditions deprive a prisoner of a state created liberty interest that is protected by due process guarantees when they result in "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 483 (1995). Applying this test, the Supreme Court concluded that the prisoner in Sandin did not have a protected liberty interest in remaining free of disciplinary detention or segregation because his

thirty-day disciplinary detention, though punitive, did not present a dramatic departure from the basic conditions of his sentence. In making this determination, the Supreme Court looked at two basic factors: (1) the amount of time the prisoner was placed into disciplinary segregation; and (2) whether the conditions of his confinement in disciplinary segregation were significantly more restrictive. After reviewing these two factors, the Supreme Court concluded that thirty days in disciplinary detention, which was similar in many respects to administrative custody, did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest.

Here, Plaintiff does not state what his disciplinary sanctions were for each of the alleged misconducts and therefore he has not shown that his disciplinary confinement impacted a constitutionally protected liberty interest for which he was entitled to due process protections. Courts within this Circuit and the State of Pennsylvania, applying Sandin in various actions, have found no protected liberty interest implicated by placement in disciplinary custody for as long as two-and-a-half years absent a showing that the inmate was subject to conditions in disciplinary confinement that imposed an atypical and significant hardship in relation to the ordinary incidents of prison life. *See* Smith v. Mensinger, 293 F.3d 641, 652 (3d Cir. 2003) (Seven months disciplinary confinement did not implicate liberty interest); Griffin v. Vaughn, 112 F. 3d 703, 708 (3d Cir. 1997) (Finding that fifteen months in administrative custody did not deprive plaintiff of a liberty interest and thus he was not entitled to procedural due process protection.); Young v. Beard, 227 F. App'x 138, 141 (3d Cir. 2007) (holding that absent allegations showing that conditions in disciplinary confinement for an aggregate of 930 days imposed atypical and significant hardship on an inmate in relation to ordinary incidents of prison life, the inmate was not entitled to procedural protections required by due process during prison disciplinary

proceedings); Abney v. Walker, No. 2:06cv1248, 2007 U.S. Dist. LEXIS 36166, 2007 WL 1454265, at *3 (W.D. Pa. May 17, 2007) (adopting Report and Recommendation finding that 75 days in the RHU did not trigger due process protections); Brown v. Blaine, 833 A.2d 1166, 1172 (Pa. Commw. Ct. 2003) (Four months in the long term segregation unit was not an "atypical and significant hardship."). Plaintiff has failed to state facts or submit evidence showing that he was subject to conditions of disciplinary confinement that meet the Sandin standard and therefore he has not shown a deprivation of a cognizable liberty interest.

### F. Issues with Grievance Procedure

Plaintiff complains that the grievances he submitted were often thrown away, mysteriously lost or never responded to by staff. It is not entirely clear whether Plaintiff is alleging a violation of his due process rights due to the interference with his right to file grievances or whether his allegations relate to why he was unable to exhaust his administrative remedies prior to filing suit as required by the Prison Litigation Reform Act. *See* 42 U.S.C. § 1997e(a). If the latter, the Court notes that Defendants do not raise the affirmative defense of Plaintiff's failure to exhaust his administrative remedies as grounds for granting their motion for summary judgment. If the former then Plaintiff's claim fails because inmates do not have a constitutionally protected right to a grievance procedure and a prison's grievance procedure does not confer any substantive rights upon inmates. *See* Hoover v. Watson, 886 F. Supp. 410, 418-19 (D. Del. 1995) (citing cases), *aff'd*, 74 F.3d 1226 (3d Cir. 1995). Plaintiff's "constitutional right to petition the government for redress of grievances is the right of access to the courts, 'which is not compromised by the prison's refusal to entertain his grievance.'" Id. (quoting Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991)).

### G. Mail Tampering/Access to Courts

Plaintiff makes general allegations that Defendants tampered with his mail but he does not specify in what way they did so. It is possible that Plaintiff's mail tampering allegations relate only to his ability to file grievances and if that is the case then his claim fails for the reasons previously stated. He has not specifically alleged that Defendants interfered with his right to access the court, but assuming he claims that Defendants somehow tampered with his legal mail, he has failed to establish a First Amendment violation. Under the First Amendment, prisoners have a right of access to the courts. *See* Lewis v. Casey, 518 U.S. 343 (1996). Importantly, however, where an inmate does not allege actual injury to his ability to litigate a claim, his constitutional right to access the courts has not been violated. *See* id. at 351-53. An actual injury is shown only where a nonfrivolous claim, or one of arguable merit, is lost. *See* Christopher v. Harbury, 536 U.S. 403, 415 (2003); *see also* Monroe v. Beard, 536 F.3d 198, 205 (3d Cir. 2008). In this case, Plaintiff has not alleged that interference with his mail hindered his ability to litigate such a claim.

**H. Supervisory Liability**

Throughout his complaint, Plaintiff asserts that Defendants Beard, Lockett and Roche are liable simply by virtue of their positions. For example, he claims that Defendant Beard is liable because he oversees the operations of all Pennsylvania state prisons, that Defendant Lockett is liable because he is responsible for all employees at SCI-Pittsburgh, and that Defendant Roche is liable because he is the RHU supervisor.

For liability under 42 U.S.C. § 1983, a defendant "must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citing Parratt v. Taylor, 451 U.S. 527, 537 n.3 (1981)). "Personal involvement can be shown through allegations of personal

direction or of actual knowledge and acquiescence." Rode, 845 F.2d at 1207. However, alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement; allegations "must be made with appropriate particularity." Id.

A supervisory defendant can be held liable if he or she played an "affirmative part" in the complained-of misconduct. *See* Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986) (citing Rizzo v. Goode, 423 U.S. 362, 377 (1976)). In this regard, the Third Circuit Court of Appeals has stated that "a supervisor may be personally liable . . . if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004) (footnote omitted). Additionally, "[i]t is possible to establish section 1983 supervisory liability by showing a supervisor tolerated past or ongoing misbehavior." Baker v. Monroe Township, 50 F.3d 1186, 1191 n.3 (3d Cir. 1995) (citing Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 724-25 (3d Cir. 1989)). A supervisor may also be liable "if he or she implements a policy or practice that creates an unreasonable risk of a constitutional violation on the part of the subordinate and the supervisor's failure to change the policy or employ corrective practices is a cause of this unconstitutional conduct." Argueta v. United States Immigration & Customs Enforcement, 643 F.3d 60, 72 (3d Cir. 2011) (citing Brown v. Muhlenberg Township, 269 F.3d 205, 216 (3d Cir. 2001).

It is clear that Plaintiff seeks to hold Defendants Beard, Lockett and Roche automatically liable for the actions of their employees. This is the classic example of *respondeat superior*. As such, Plaintiff has not demonstrated adequate personal involvement on their parts.

14

On a final note, Plaintiff does allege, on a few occasions, that Defendant Lockett is liable because he did not respond to his grievance appeals. However, as previously stated, inmates do not have a constitutional right to a prison grievance system. *See*, *supra*. See also Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 137-38 (1977); Speight v. Sims, 283 F. App'x 880, 881 (3d Cir. 2008) (citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001), stating that "the existence of a prison grievance procedure confers no liberty interest on a prisoner.") It is not clear if Plaintiff is alleging that Defendant Lockett is liable because he knew about the other Defendants' alleged misconduct through Plaintiff's grievance appeals but failed to do anything to remedy the situation. If that is the case, then Plaintiff has still failed to establish personal knowledge on the part of Defendant Lockett because personal knowledge of constitutional violations cannot be established solely as a result of addressing grievances. *See* Rode, 845 F.2d at 1208. In other words, the denial of a grievance or mere concurrence in an administrative appeal process is insufficient to establish personal involvement. *See* Simonton v. Tennis, 437 F. App'x 60, 62 (3d Cir. 2011) ("[A] prison official's secondary review of an inmate's grievance or appeal is not sufficient to demonstrate the personal involvement required to establish the deprivation of a constitutional right."); Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006) (holding that a state prisoner's allegation that prison officials and administrators responded inappropriately, or failed to respond to a prison grievance, did not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct); Manns v. Bledsoe, No. 10-1564, 2011 U.S. Dist. LEXIS 102268, 2011 WL 4048781, at *4 (M.D. Pa. Sept. 12, 2011); Mincy v. DeParlos, No. 08-0507, 2011 U.S. Dist. LEXIS 31168, 2011 WL 1120295, at *7 (M.D. Pa. Mar. 24, 2011); Wilkerson v. Schafer, No. 09-2539, 2011 U.S. Dist. LEXIS 25916, 2011 WL 900994, at *7 (M.D. Pa. Mar. 14, 2011) (allegations that defendants

"should be held liable for due process violations because they should have become aware of them through their review of his misconduct appeals is insufficient to establish their personal involvement in the underlying unconstitutional conduct"); Logan v. Lockett, No. 07-1759, 2009 U.S. Dist. LEXIS 24328, 2009 WL 799749, at *8 (W.D. Pa. Mar. 25, 2009); Croom v. Wagner, No. 06-1431, 2006 U.S. Dist. LEXIS 64915, 2006 WL 2619794, at *4 (E.D. Pa. Sept. 11, 2006) (holding that neither the filing of a grievance nor an appeal of a grievance is sufficient to impose knowledge of any wrongdoing); Ramos v. Pa. Dept. of Corr., No. 06-1444, 2006 U.S. Dist. LEXIS 51582, 2006 WL 2129148, at *2 (M.D. Pa. July 27, 2006) (holding that the review and denial of the grievances and subsequent administrative appeal does not establish personal involvement).

I. Conclusion

Plaintiff makes a number of allegations against individuals who are not named as defendants. Claims against these individuals will not be addressed by the Court. Finally, to the extent any claim related to the named Defendants has not been addressed in this Memorandum, the Court deems the claim to be without merit. Defendants Motion for Summary Judgment will be granted. An appropriate Order follows.

**AND NOW** this _____ day of December, 2013;

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 56) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of Court mark this case **CLOSED**.

**AND IT IS FURTHER ORDERED** that pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, Petitioner has thirty (30) days to file a notice of appeal as provided by Rule 3 of the Federal Rules of Appellate Procedure.

_____
Lisa Pupo Lenihan
Chief United States Magistrate Judge

cc: James E. Clemens
 FH 0750
 SCI Forest
 P.O. Box 945
 Marienville, PA 16239
 *Via First Class Mail*

 Counsel of Record
 *Via ECF Electronic Mail*